Collette Stark
2175 Cowley Way
San Diego, CA 92110
619-347-0726 (do not telemarket)



**FILED**

Nov 14 2022

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ___s/ gloriav___ DEPUTY

Plaintiff pro se

# UNITED STATES FEDERAL DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| Collette Stark, | Case No.: **'22CV1775 JLS  BGS** |
| Plaintiff, | |
| | **COMPLAINT** |
| vs. | **1. 47 U.S.C. §227 (TCPA)** |
| | **2. PC §637.2 / 632.7 (CIPA)** |
| PANDAWHITE, INC, | **3. CIVIL CODE §1770(A)(22)(A)** |
| Defendant | |

Plaintiff Collette Stark (herein "Plaintiff" or "Stark") brings this civil

Complaint for money damages and injunctive relief, demanding a trial by jury,

against Defendant Pandawhite, Inc[1] to stop said defendant from violating the

Telephone Consumer Protection Act and the Telemarketing Sales Rule by sending

telemarketing text messages and calling with prerecorded artificial voice messages

---

[1] Plaintiff hereby puts Vahe Copalian on notice that he is going to be named as a defendant as soon as discovery establishes a goodfaith belief that he is vicariously liable.  Please review the Uniform Fraudulent Transfer Act.
COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 1

to Plaintiff's personal residential cellular phone (ending in -0726), which is registered on www.donotcall.gov (the National Do Not Call Registry) without permission and without consent of Plaintiff.   Plaintiff Stark, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, including investigation conducted by Plaintiff[2].  Plaintiff is suing to stop Defendant's practice of sending text messages and callings using an "automatic telephone dialing system" ("ATDS") to the cellphones of consumers in San Diego county without their prior express consent by obtaining an injunction prohibiting violation of the TCPA; (2) stop Defendant's practice of sending repeated text messages to consumers on the National Do Not Call Registry, which includes Plaintiff; (3) obtain an injunction prohibiting Defendant's continued illegal efforts to send text messages and make harassing calls to consumers, including Plaintiff; and (4) obtain redress for Plaintiff Stark who was injured by Defendant's conduct.

---

[2] See 21cv-01764-GPC-BLM at PageID.1 in ECF No. 1, *Trujillo vs. Encore Live, LLC*
COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 2

22cv

## PARTIES

1. Plaintiff Collette Stark is a natural person as defined by 47 USC §153(39), and a resident of San Diego, California at all times relevant to this action. Plaintiff was present in San Diego at all times relevant to this action and was also the owner and sole user of personal, private residential cellular phone number 619-347-0726[3].

2. Plaintiff has been repeatedly <u>called</u> and <u>texted</u> by Pandawhite, Inc, directly, without consent, permission or authority, all in direct violation of express commands by Plaintiff to stop, cease and desist and by virtue of registration on www.donotcall.gov as well as Plaintiff's express demands directly to Defendant to stop all future calls and texts.

3. Defendant Pandawhite, Inc is a California corporation that conducts business throughout this District, in San Diego, California.  Defendant Pandawhite, Inc is a "person" as defined by 47 USC §153(39).  Defendant is in the business of selling construction and remodeling servcies.  Defendant uses the wires of the United States to harass and annoy DNC registered telephone

---

[3] For clarity, this number is not a hardwired landline.

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 3

22cv

owners with their solicitation calls to sell construction services to unsuspecting victims in California.

4. Defendant Pandawhite, Inc is located at 45535 SEAGULL WAY TEMECULA, California 92592. Plaintiff is only suing Pandawhite, Inc and no other persons or parties, named or unnamed, whether as Does or otherwise. Defendant's attorneys should not be confused here. Plaintiff repeats herself again, there is only One (1) defendant named in this civil lawsuit and Plaintiff is specifically alleging that Defendant directly engaged in the illegal and offending conduct.

## JURISDICTION AND VENUE

5. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"). This is not a "diversity" of citizenship case. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012)

6. This Court has personal jurisdiction over the Defendant since the Defendant conducts business in this District and specifically marketed to Plaintiff within this District relating to the business that it conducts here. Venue is proper in this District because Plaintiff resides in this District and the events leading to this case occurred in this District.

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 4

22cv

7. The Court has ancillary and supplemental jurisdiction, in its discretion, over the attendant state law claims that are part of a common nucleus of operative facts.  Plaintiff is suing for violation of CIPA, PC §632.7 et seq. – illegal cell phone recording, Civil Code §1770(a)(22)(A)- illegal prerecorded voice message to a cell phone without consent and without a prior live operator introduction.

8. Defendant Pandawhite, Inc has purposefully directed its activities into California.  Area code 619 is entirely within San Diego County.

**INTRODUCTION**

9. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).  Although it has been well over a year since her last TCPA filing, Plaintiff is doing her job to help stop harassing and annoying telemarketers throughout the country by filing these lawsuits.

10. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). Plaintiff has registered her phone on www.donotcallgov.

11. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

12. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

13. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

14. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

15. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

16. According to online robocall tracking service "YouMail," 4 billion robocalls were placed in September 2021 alone, at a rate of 131.1 million calls per day. www.robocallindex.com. Plaintiff still receives nearly a dozen

22cv

harassing and annoying robocalls each and every week from unscrupulous businesses trying to sell auto repairs, life insurance, solar panels, credit repair, student loan assistance, and merchant cash advances to name just a few.

17. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.  It is unfortunate that making a complaint to the FCC actually results in nothing being done.  The FCC simply does not have the resources to go after telemarketers.

18. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, Cutting off Robocalls (July 22, 2016), statement of FCC chairman.[4]

19. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the*

---

[4] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 7

22cv

*Telephone Consumer Protection Act of 1991*, Notice of Proposed

Rulemaking, CG Docket No. 02-278, at 2 (2016).[5]

20. In recent years a troubling trend has surfaced in construction and solar

panel industry, cold calling consumers soliciting their services without their

consent, including calls that are being placed to consumers that registered

their phone numbers on the DNC.

21. This construction services telemarketing trend has resulted in consumers,

including this Plaintiff, being bombarded by unsolicited solicitation calls

without their (or her) consent and in violation of the TCPA, in violation of

CIPA, and Civil §1770.

22. The initial part of the call was a prerecorded voice, then Defendant's

employee "Marisol" admitted to Plaintiff, at the end of the 11/13/2022

telemarketing call, when asked by Plaintiff, that Defendant does in fact

record all of its solicitation calls.  Marisol transferred the call to another

person who attempted to justify the illegal act of recording by adding that

they record for "training and quality control purposes" but that additional

fact is not an excuse for violating CIPA.  Any and all calls into California

---

[5] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 8

must disclose, at the beginning of the call, that said call is being recorded. Waiting until the very end of the call to admit, when asked, that it was recorded is too late.  Liability for recording attaches when there is a call, to a cellular phone, where there is a reasonable expectation of privacy and disclosure of the fact of recording does not occur at or near the beginning of said call.  Cellular phones do not require confidential private information to be exchanged to be protected by CIPA.  Defendant failed to disclose the fact of its recording at the beginning of its telemarketing calls to Plaintiff.

23.  In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

24.  The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

25. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.  Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

26. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. §64.1200(f)(12).  In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

27. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" Id. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

28. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations*

*Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

29. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future. *Id.*

30. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

31. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

32. Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are

for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the text message). (*emphasis added*).

## COMMON ALLEGATIONS

33. Defendant Pandawhite, Inc is a construction service, selling its services throughout San Diego County.

34. Defendant Pandawhite, Inc which conducts business using the assumed name "PandaWhite Builders" owns and operates the website, www.pandawhite.com.

35. Defendant Pandawhite, Inc conducts telemarketing campaigns to sell its services to consumers throughout southern California.  As part of those campaigns, unsolicited text messages are sent to cell phones of consumers across the county of San Diego by Defendant Pandawhite, Inc   Plaintiff can assert and allege this detailed fact because Defendant's employee, Marisol, expressly admitted it.

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 12

22cv

36. In placing unsolicited text messages to consumers, Defendant Pandawhite, Inc sent multiple text messages to phone numbers that are registered on the DNC, such as Plaintiff's number (-0726).

37. In response to these text messages, Plaintiff Stark files this lawsuit seeking injunctive relief requiring Defendant Pandawhite, Inc to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to Plaintiff Stark and costs ($402 filing fee plus service of process fees).  The text messages were generic in nature and did not address Plaintiff by name.  The text message did not offer a way to opt out or to stop future solicitation texts.

38. Plaintiff Stark heard a very clear "bubble popping" type sound followed by a rather long pause before the artificial-voice prerecorded message began to play on the call.  Plaintiff was required to hit "1" to be transferred to a live operator.  This happened on each and every call (not on the texts) that is the subject of this lawsuit.  Many courts have held that this very same bubble popping and long pause are highly indicative of an ATDS being used.  However, the Defendant likely fails to comprehend that it is also violation of section 227(b)(1)(A) to use, and Defendant did in fact use, an artificial pre-

recorded voice message to obtain a subsequent transfer to a live operator employee of Defendant.

39. Plaintiff and Defendant do not have a pre-existing business relationship. Plaintiff has never been a customer or client of Defendant's business.

40. Specifically, the hardware and software used by Defendant Pandawhite, Inc has the capacity to store and/or produce numbers using a random or sequential number generator, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendant's automated dialing equipment includes features substantially similar to a predictive dialer in that it is capable of sending numerous text messages and calls simultaneously, without human intervention. The distinct bubble-popping sound and the long silent pause were, in Plaintiff vast experience, the clear indication that an ATDS robo-dialer was used by Defendant for the calls.

41. The text messages were sent by Defendant with its knowledge and approval of the CEO of Defendant. Defendant Pandawhite, Inc knew about the messages, received the benefits of the messages, directed that the messages be sent, and/or ratified the sending of the messages by its employees using Defendant's computers and software. The text messages were generic which indicates an ATDS was used by Defendant.

42. All of the text messages were sent via an ATDS at the direction and oversight of Defendant Pandawhite, Inc.   Said Defendant knew about, directed, ratified, and benefitted from the solicitation text messages that it directly sent to Plaintiff.

43.  Based on Plaintiff's vast knowledge and experience with these type of telemarketers, the equipment used to send the texts at issue has the capacity to use a random or sequential number generator in the process of storing numbers from a pre-produced list for texting at a later date.[6]  Plaintiff alleges that this is exactly what Defendant Pandawhite, Inc has done.

44. The equipment at issue, in this case, also has the capacity to produce telephone numbers using a random or sequential number generator. Specifically, the texting software, by virtue of being inextricably linked to a computer operating system, has the capacity to generate random or sequential telephone numbers.  One of Defendant's employees, Marisol, expressly admitted that they were using an "auto dialing computer" to make the calls and send out the text messages in order to get California residents to buy their construction services.  Defendant earns and gets paid a

_____

[6] 21-cv-01646-L-BLM, PageID.6, ECF No. 1, *Williams vs. Zeeto, LLC* (SD CA 9/20/21)
COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 15

22cv

commission for each construction project they sell.  Defendant is also in fact

license by the California CSLB as a general contractor.

45. By sending unsolicited text messages as alleged herein, Defendant

Pandawhite, Inc has caused Plaintiff  actual harm. This includes the

aggravation, nuisance, and invasions of privacy that result from the

placement of such text messages, in addition to the wear and tear on her

phone, interference with the use of her phone, consumption of battery life,

loss of value realized for monies she paid to her AT&T carrier for the receipt

of such messages, and the diminished use, enjoyment, value, and utility of

her telephone plan. Furthermore, Defendant Pandawhite, Inc sent the

messages knowing they trespassed against and interfered with Plaintiff's use

and enjoyment of, and the ability to access, her phone, including the related

data, software, and hardware components.

46. FCC regulations promulgated under the TCPA specifically prohibit

Defendant from using an artificial or prerecorded voice to call Plaintiff's

Number for the purpose of advertising or telemarketing absent Plaintiff's

prior express written consent. See 47 C.F.R. § 64.1200(a)(2)[7]

---

[7] 21-cv-02040-CAB-KSC, PageID.4 in ECF No. 1, *Johnson vs. Digital Media Solutions.*

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) -
16

22cv

# PLAINTIFF STARK'S ALLEGATIONS DIRECTLY AGAINST

# DEFENDANT PANDAWHITE, INC

47.  Defendant Pandawhite, Inc called or texted Plaintiff Stark, on her DNC

registered personal cell phone, 619-347-0726, on the following dates:

  a.  August 9, 2022 from 858-371-4793 at 10:26 AM -- Call

  b.  August 11, 2022 from 858-371-4793 at 10:16 AM – Call

  c.  August 13, 2022 from 760-822-4606 at 10:51 AM—Call

  d.  August 15, 2022 from 855-700-2433 at 10:19 AM – Call

  e.  September 13, 2022 from 855-700-2433 at 2:36 PM – Call

  f.  September 15, 2022 from 858-371-4796 at 9:23 AM – Call

  g.  September 19, 2022 from 858-266-0923 at 8:06 AM—Call

  h.  September 25, 2022 from 858-371-4793 at 2:13 PM – Call

  i.  October 23, 2022 from 858-371-4793 at 1:51 PM – Call

  j.  October 24, 2022 from 760-822-4606 at 2:36 PM-- Call

  k.  October 13, 2022 from 858-371-4793 at 1:07 PM – Call

  l.  October 14, 2022 from 858-266-0923 at 2:24 PM—Call

  m. October 24, 2022 from 855-700-2433 at 4:13 PM – Call

  n.  November 1, 2022 from 760-822-4606. –text message

  o.  November 2, 2022 from 858-371-4796. –text message

COMPLAINT   1. 47 U.S.C. §227 (TCPA)    2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 17

p. November 13, 2022 from 858-266-0923. –text message

48. The above dates, times, from what number and to what number is all the detail that is required under the TCPA.  Nothing else is necessary at the initial pleading stage.  *See* Rule 8 and Rule 10, FRCP.  The Court is also respectfully requested to see each footnote and the cases that Plaintiff has cited from.  While this TCPA Complaint was written by a pro per litigant, it was effectively lifted from TCPA complaints drafted by TCPA plaintiff lawyers.

49. There were, thus far, 13 calls (($1,500 + $1,500 +$5,000) *13 = $104,000)) and 3 text messages ($1,500 + $1,500  at times 3 = $9,000) from Defendant Pandawhite, Inc

50. Defendant's employee Marisol admitted to Plaintiff that she did not dial Plaintiff's phone number by finger, but rather using a computer software that stores and automatically dials the phone numbers without any input from her.  "Marisol" stated that once a person hit's "1" then the software connects or transfers the call to either her or another telemarketer in the office.

51. Replying "STOP" did not work.  Plaintiff received additional subsequent text messages from Defendant Pandawhite, Inc.   Importantly, Plaintiff became angry on each telephone call making very clear that the caller must

never telemarket her ever again.  And yet, Defendant Pandawhite, Inc keeps calling and texting which demonstrates willful, intentional and malicious conduct.

52. Spoofing the prefix of 347, or any other local prefix spoof, is a standard ATDS robo-dialing technique or practice that all telemarketers use to attempt to increase the likelihood that a called person will answer the call. Fortunately, since the STIR/Shaken[8] laws were made effective, this scam is now significantly attenuated but it is not stopping by any stretch of the imagination.

53. The pre-recorded voice message at the beginning of each telephone solicitation call from Defendant (not a 3rd part or agent) stated: "*Could you some help with remodeling your home?  Press one for to be connected*" or similar words to that affect.  The TCPA and CLRA do not require a plaintiff to be able to memorize and regurgitate every word that every telemarketer states.

54. Defendant Pandawhite, Inc was calling to sell its construction services to Plaintiff who was in California at the time.

---

[8] https://www.fcc.gov/call-authentication

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 19

22cv

55. Plaintiff Stark registered her cell phone number on the DNC more than 31 days prior to the aboved stated initial call, for the express purpose that she would not receive unsolicited calls or text messages.  Plaintiff Stark has gone even further to pay for various web pages informing the world of telemarketers to not call her or else they will be sued.

56. Plaintiff Stark's phone number is used for personal, private residential use. Notwithstanding, mixed use phones are still fully protected.

57. The text messages that Plaintiff received are solicitations encouraging the purchase of Defendant's services.

58. The text messages were sent by Defendant Pandawhite, Inc.  The text messages were sent at Defendant Pandawhite, Inc's direction, command and control, that is, Defendant ordered each of its employees to respond to the calls that it made after it sent out the automatic solicitations.

59. Defendant Pandawhite, Inc expressly and overtly controlled the exact generic content of the text messages.

60. The text messages did not address Plaintiff by name.  Thus they were sent by, with and through an automatic telephone dialing system or robo-dialer.

61.  Said dialing system has the capacity to produce, store and randomly generate phone numbers and to dial those numbers without human intervention.

62.  Plaintiff Stark never provided her phone number or her consent to Defendant Pandawhite, Inc to receive any solicitation from them or on their behalf.  Prior to receiving the text messages, Plaintiff had never visited any location or internet web page owned, used, or controlled by Defendant Pandawhite, Inc

63.  The unauthorized solicitation telephone text messages that Plaintiff received from Defendant, as alleged herein, have harmed Plaintiff Stark in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

64.  Section 310.3(b) of the TSR prohibits providing substantial assistance or support to telemarketers when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates the TSR.  *United States v. Dish Network LLC*, No. 09-3073, 2017 U.S. Dist. LEXIS 85543, at *299 (C.D. Ill. June 5, 2017)

65.  The phone calls placed to Plaintiff's cellular telephone were placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. §227 (a)(1) as prohibited by 47 U.S.C. § 227 (b)(1)(A).  At one or more instance during these calls, Defendant Pandawhite, Inc utilized an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

66. Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

67. Defendant's calls were placed to telephone number assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

68. Plaintiff is not a customer of Defendant's services and has never provided any personal information, including her cellular telephone number, to Defendant Pandawhite, Inc for any purpose whatsoever.  In addition, Plaintiff told Defendant Pandawhite, Inc at least once to stop contacting her and Plaintiff has been registered on the Do-Not-Call Registry for at least thirty (30) days prior to Defendant Pandawhite, Inc contacting her. Accordingly, Defendant Pandawhite, Inc never received Plaintiff' "prior express consent" to receive calls using an automatic telephone dialing

system or an artificial or prerecorded voice on her cellular telephone pursuant to 47 U.S.C. § 227(b)(1)(A).[9]

69. Plaintiff did not have a personal relationship with Defendant Pandawhite, Inc at any point in time.[10]

70. Defendant Pandawhite, Inc did not make the telephone solicitations in error.

71. When Plaintiff answered calls from Defendant Pandawhite, Inc, she heard a prerecorded message and had to wait on the line to be transferred to a live representative after pressing "1."

72. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See* In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, ¶ 136 (2003).

73. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See* In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

---

[9] 21-cv-01204-H-WVG at PageID.4 in ECF No. 1, *Benitez vs. United Debt Settlement, LLC.*
[10] 21-cv-01123
COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 23

74. The Honorable Chief Judge Dana M. Sabraw has ruled, in *Gross vs. GG Homes,* in the Southern District of California, that the US Supreme Court's ruling in *Duguid vs. Facebook* does not apply at the motion to dismiss stage of the litigation, but it is more properly applied at the Rule 56 MSJ stage.

75. Plaintiff has never done business with Defendant or any of its employees.

76. Defendant's initial portion of each call shown above, was a violation of 47 USC §227(b)(1)(A) because it was initially a prerecorded artificial voice. That means the test of whether an ATDS was used is not relevant at this time.

77. The Complaint alleges 13 of the 16 telephone calls violated of CLRA – Cal. Civ. Code §1770(a)(22)(A), but not the three text messages sent without consent.   Since Plaintiff demanded that Defendant stop calling at the end of the first call, then Plaintiff asserts a CLRA violation on 13 of the calls alleged herein.

78. Billions of illegal and harassing telemarketing calls are made to Americans each month.  But for people like Plaintiff, it would be tens of billions of illegal and harassing telemarketing calls.  Parasitic criminal organizations like Defendant need to be put out of business in order to stop this infection

called telemarketing.  Most Americans receive more spam texts and more

telemarketing calls than they do communications from friends and family.

79. Defendant Pandawhite, Inc, through its employee Marisol and others, called

Plaintiff to sell its construction services.  The calls were not placed by an

unknown third party.  Defendant physically initiated the calls and physically

sent the text message with their auto dialing software and equipment.

80. Since Plaintiff registered her personal private cellular phone, 619-347-0726,

on www.donotcall.gov more than 31 days prior to the first call and the first

text from Defendant, then Defendant's failure to scrub their calling lists

against the DNC is a violation of 27 USC §227(c).

81. Defendant's illegal calls and illegal texts were and are the cause of Plaintiff

damages, including statutory damages, which have been held to be sufficient

damage and sufficient injury to pass Article III standing.

82. Defendant called Plaintiff's cellular telephone number, using an automatic

telephone dialing system with a prerecorded artificial voice message

introduction, without Plaintiff's prior express written consent, by robo-

dialing Plaintiff's DNC registered phone number, devoid of any pre-existing

or established business relationship.  Further, Defendant continued to

seriously and substantially harass and annoy Plaintiff after Defendant was

expressly and explicitly told to cease and desist.  Defendant would not know concrete injury even if it were hit by a ton of concrete bricks.

83. Since Defendant has failed to provide a copy of its DNC policies and training procedures, within 30 days, then Defendant has violated the FCC and FTC regulations that are incorporated into 27 USC §227.

## FIRST CLAIM FOR RELIEF
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227(b)(1)(A) and (c)(5))
### (Against Defendant Pandawhite, Inc)

84. Plaintiff Stark repeats and realleges paragraphs 1 through 83 of this Complaint and incorporates them by reference.

85. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

86. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action

based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

87. Defendant Pandawhite, Inc violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry participants (including Stark) who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

88. Defendant Pandawhite, Inc violated 47 U.S.C. § 227(c)(5) because Plaintiff received more than one telephone text message in a 12-month period made by or on behalf of Defendant Pandawhite, Inc in violation of 47 C.F.R. § 64.1200, as described above.

89. Defendant Pandawhite, Inc failed to obtain any prior express consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i), a "clear and conspicuous" disclosure informing the person signing that:

    (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing text messages using an automatic telephone dialing system; and

(B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

90. As a result of Defendant's conduct as alleged herein, Plaintiff suffered actual damages and, under section 47 U.S.C. § 227(c), is entitled, *inter alia,* to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

91. Defendant Pandawhite, Inc used an ATDS to both send text messages and to dial Plaintiff's phone number to play its artificial prerecorded voice message.

92. By sending unsolicited text messages to Plaintiff's cellular telephone without prior express consent, and by utilizing an ATDS, Defendant Pandawhite, Inc violated 47 U.S.C. § 227(b)(1)(A)(iii).

93. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by Plaintiff.

94. Defendant PANDAWHITE, INC violated 47 USC §227(b)(1)(A) by using an artificial prerecorded voice message and by sending generic unsolicited text messages with an ATDS, for which Plaintiff is entitled to $500 for each negligent violation and $1500 for each willful or knowing violation.

95. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, '*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.*'" The Report and Order, in turn, provides as follows:

"The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers."

96. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing call made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called

party with the name of the individual caller, the name of the
person or entity on whose behalf the call is being made, and a
telephone number or address at which the person or entity may be
contacted. The telephone number provided may not be a 900
number or any other number for which charges exceed local or
long-distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request
by the subscriber to the contrary, a residential subscriber's do-not-
call request shall apply to the particular business entity making the
call (or on whose behalf a call is made), and will not apply to
affiliated entities unless the consumer reasonably would expect
them to be included given the identification of the caller and the
product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls
for telemarketing purposes must maintain a record of a consumer's
not to receive further telemarketing calls. A do-not-call request
must be honored for 5 years from the time the request is made.

97. Here, Defendant Pandawhite, Inc sent Plaintiff Stark multiple unsolicited
text messages after she had submitted valid "STOP" and "BYE" requests.

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) -
31

22cv

98. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiff is entitled an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## SECOND CLAIM FOR RELIEF
**Consumer Information Privacy Act**
**(Violation of CA Penal Code §632.7 and §637.2)**
**(Against Defendant Pandawhite, Inc)**

99. Plaintiff Stark repeats and realleges paragraphs 1 through 83 of this Complaint and incorporates them by reference.

100.    The foregoing acts and omissions of Defendant Pandawhite, Inc constitute numerous and multiple knowing and/or willful violations of California's Invasion of Privacy Act.

101.    As a result of Defendant's knowing and/or willful violations of PC §632.7 and §637.2, Plaintiff is entitled to statutory damages of $5,000 per call that was illegally recorded without Plaintiff's knowledge or consent.

102.    Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

## THIRD CLAIM FOR RELIEF
**Consumer Legal Remedies Act**
**(Violation of CA Civil Code §1770(a)(22)(A))**
**(Against Defendant Pandawhite, Inc)**

103.     Plaintiff Stark repeats and realleges paragraphs 1 through 83 of this Complaint and incorporates them by reference.

104.     Defendant Pandawhite, Inc used and employed an artificial voice, prerecorded message, without consent or permission in advance, to initiate each call to Plaintiff.

105.     Plaintiff suffered harm by Defendant's violation of California Civil Code §1770(a)(22)(A), inter alia, through the loss of use of her phone during each call as well as annoyance and harassment caused, proximately and actually, by Defendant Pandawhite, Inc.  Damages of $2500 per call for 13 of the 16 calls are hereby requested based on the harassment and civil stalking engaged in by Defendant.

106.     Defendant's acts of unfair competition include, but are not limited to, the following:  (1) directly violated the TCPA at 47 USC §227(c) and its regulations at 47 C.F.R. §64.1200(c)(2), by engaging in a pattern or practice of initiating telephone solicitations to Plaintiff's residential telephone, whose telephone number was listed on the National Do Not Call Registry, and (2) directly violated 47 C.F.R. §64.1200(a)(2) and 47 USC §227(b)(1)(B), by engaging in a pattern or practice of initiating telephone solicitations to Plaintiff's residential telephone line, using artificial or prerecorded voices to

deliver a message without the prior express consent of the called party and where the call was not initiated for emergency purposes or exempted by rule or order of the Federal Communications Commission under 47 USC §227(b)(2)(B).

107.    Defendant has directly violated California Business & Professions Code section 17592(c)(1) by making or causing to be made telephone calls to Plaintiff's California telephone number listed on the National Do Not Call Registry and seeking to rent, sell, promote, or lease goods or services (namely construction services) during those calls.

108.    Plaintiff is entitled to, and hereby seeks, both punitive and exemplary damages to send a clear message to Defendant and others like Defendant to cease and desist from violation of the law.

109.    Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Stark, individually, prays for the following relief:

a) Damages as provided by statute and in the discretion of the Court;

b) An award of actual and/or statutory damages and costs plus treble damages if willful or knowing violations are shown;

c) An order declaring that Defendant's actions, as set out above, violate the

TCPA;

d) As a result of Defendant's negligent violations of 47 U.S.C. §227(b)(1)

and §227(c)(5), Plaintiff is entitled to and requests $500 in statutory

damages, for each and every violation, pursuant to 47 U.S.C. 227(b)(3)(B)

plus treble damages ($1,500 per call and per text), a total of $3,000 per call

under the TCPA;

e) An injunction requiring Defendant to cease all unsolicited calling activity

that violates the TSR, the FTC Act and the TCPA, and to otherwise protect

the interests Plaintiff Stark;

f) $5,000 for each call the was illegally recorded without Plaintiff's consent,

g) $2,500 for each of the 13 calls that contained a pre-recorded artificial

voice message at the beginning of each call.

h) for exemplary and punitive damages against Defendant in an amount to

be determined with exactness at trial herein; and

i)      Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Stark requests a jury trial.

Dated this 14th day of November, 2022.

/s/ Collette Stark

Collette Stark, Plaintiff

22cv